983 F.2d 449
 UNITED STATES of America, Appellant,
v.
Shawn W. PANGBURN, Rosanne L. Pangburn, Jeffrey L. Mottler,
Thomas P. Coleman, Laurel A. McKee, Victoria D.
Frederico, Andrew M. Puleo, Defendants,
Frank J. Salcido, Defendant-Appellee.
 No. 60, Docket 92-1150.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 15, 1992.
Decided Jan. 13, 1993.
 
 Sean Connelly, Atty., U.S. Dept. of Justice, Washington, DC (Dennis C. Vacco, U.S. Atty., W.D.N.Y., Thomas S. Duszkiewicz, Asst. U.S. Atty., W.D.N.Y., Buffalo, NY, of counsel), for appellant.
 Roger L. Cossack, Santa Monica, CA (David Rothenberg, Geiger & Rothenberg, Rochester, NY, of counsel), for defendant-appellee.
 Before MINER, ALTIMARI and WALKER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Appellant United States of America appeals from an order entered in the United States District Court for the Western District of New York (Telesca, C.J.) suppressing evidence seized in consequence of the execution of two covert entry warrants allowing searches without physical seizure and one conventional search and seizure warrant. The evidence is relevant to the prosecution of defendant-appellee Frank J. Salcido for various crimes arising out of his alleged involvement in precursor chemical trafficking. The warrants were issued by the Los Angeles Municipal Court upon the application of a special agent employed by the Bureau of Narcotics Enforcement ("BNE") of the California Department of Justice and authorized the search of a certain storage locker situated in Sylmar, California. The chemicals suppressed were seized from the locker pursuant to the third warrant.
 
 
 2
 The district court determined: that the two covert entry warrants allowing searches without physical seizure were invalid for failure to provide that notice be given to Salcido at least seven days after each covert entry; that the third warrant was invalid because it was issued on the basis of information acquired through the two covert entry searches; and that the claim of objective good faith put forward by the Government was not supportable. Although we have required that seven days notice be given after covert entries for which search without physical seizure has been authorized, that notice requirement is grounded in Fed.R.Crim.P. 41 and is not compelled by the Constitution. Therefore, in the absence of a showing of intentional disregard of the requirement or of prejudice, we will not suppress evidence gained under a warrant that does not provide for the proper notice. Because no such showing was made here, we reverse the order of suppression as to the first two warrants. We also reverse as to the third warrant, which was properly issued on the basis of information gained from the execution of the first two warrants.
 
 BACKGROUND
 
 3
 The warrants giving rise to this appeal were issued in connection with a joint federal-state investigation of trafficking in precursor chemicals used for the manufacture of methamphetamines. Federal Drug Enforcement Administration ("DEA") agents in the Rochester, New York area learned that Eastland Chemical Distributors, Ltd., a Rochester company, was shipping large quantities of methamphetamine precursors from Rochester to California. According to available information, the shipments were destined for Eastland's California subsidiaries, Eastland Chemical West, Ltd. and Pacific Vitamins, and for defendant-appellee Salcido. The investigation was carried forward by BNE agents in California at the request of the DEA. In the course of the investigation, BNE Special Agent Stephen Gossman secured, and participated in the execution of, three separate warrants for the search of a certain storage locker rented by Salcido from United Stor-All in Sylmar.
 
 
 4
 Based on an affidavit of Special Agent Gossman, Judge David Milton of the California Municipal Court issued the first search warrant for storage locker # F-49 on April 18, 1989. The warrant provided that, in the discretion of the agents executing the warrant, any property described in the warrant "may be photographed by the agents instead of being physically seized." The warrant also provided:
 
 
 5
 [A]t the discretion of the agents executing this search warrant, neither a copy of the search warrant nor an inventory of items seized or photographed need be left at the location searched. Any disclosure would impede the investigation of a suspected felony pursuant to which this warrant is issued.
 
 
 6
 Recited in Gossman's affidavit in support of the warrant were the following facts: A reliable informant had furnished information regarding a shipment of a large quantity of red phosphorus and acetone from Rochester to Yellow Freight Systems in Sun Valley, California. The shipment was said to be marked to be held for "Crazy Frank Enterprises," which then was under investigation for manufacturing and distributing methamphetamine. A security investigator for Yellow Freight confirmed a shipment of 30 lbs. of red phosphorus and five gallons of acetone to the Yellow Freight location. Agents engaged in surveillance observed Salcido pick up the chemicals from that location and next observed him at the Stor-All storage lockers. The BNE agent determined that locker # F-49 was rented to a "John Salcido," although neither the investigating agents nor the Stor-All manager observed any transfer of chemicals to the locker. Salcido previously had been arrested for possession of narcotics for sale and had been suspected in the past of large-scale trafficking in cocaine. Based on the foregoing, Agent Gossman opined that "there is a fair probability that chemicals and/or a working clandestine methamphetamine lab [are] currently being stored at ... storage locker # F-49."
 
 
 7
 The search warrant was executed on the same day it was issued and the return of the warrant, sworn to by Agent Gossman on April 19, 1989, recited the following: "No contraband seized as explained in the sneak peek search warrant affidavit. 22 photographs of boxes containing various chemicals taken by agents of the California Department of Justice, Bureau of Narcotic Enforcement." No notice of the execution of the warrant was given to Salcido.
 
 
 8
 Agent Gossman presented an affidavit in support of his application for the second search warrant to Judge Milton on May 3, 1989. In this affidavit, Gossman described the results of the earlier search and set forth some information acquired since that time. New information included the following: that Eastland Chemical in Rochester had purchased in 1988, 3080 lbs. of L-ephedrine hydrochloride; 440 lbs. of DL-ephedrine hydrochloride; 1105 lbs. of hydriodic acid; 650 lbs. of freon; 300 lbs. of hydrogen chloride gas; and 40 lbs. of red phosphorus; that a combination of these precursor chemicals could yield approximately 3300 lbs. of methamphetamine with a street value of $150,000,000; that there was no legitimate use for the amount of chemicals ordered; and that this quantity of chemicals would qualify Eastland as the fourth largest consumer of EL-Ephedrine and DL-Ephedrine in the United States.
 
 
 9
 According to the second affidavit, Gossman and other agents on April 28, 1989 conducted a controlled delivery of 55 kilograms of ephedrine, consigned to Pacific Vitamins, which they previously had intercepted. The chemicals had been shipped via Federal Express from Eastland Chemical Company to Pacific Vitamins at 6600 Orange Street, Los Angeles. The Federal Express supervisor who delivered the shipment was met in the hallway of the building at 6600 Orange Street by an individual who represented himself to be "Jim Wagner." "Wagner," who had signed for other precursors shipped by Eastland to Pacific, signed the billing manifest and took possession of the shipment. Later that day, the surveillance team observed Salcido leave the apartment complex at 6600 Orange Street carrying a large brown box that he placed in a red Chrysler automobile. Salcido drove off in the automobile, and the agents maintained surveillance until they lost sight of the vehicle in traffic.
 
 
 10
 Based on the foregoing, Agent Gossman "formed the opinion that there is a fair probability that the 55 kilograms of ephedrine are currently being stored at ... Storage Locker # F-49." Gossman once again sought, and was granted in the second warrant, permission to photograph the contents of the locker in lieu of seizure. At Gossman's request, the search warrant also dispensed with service of a copy of the warrant, provision of an inventory of items photographed, or notice of any kind. As in his first application, Gossman asserted that "disclosure would impede the investigation of a suspected felony." The second warrant was executed on the date of its issuance, and the return of the warrant, made on May 9, 1989, reported the search results as follows: "No contraband seized as explained in the 'sneak peek' search warrant affidavit. 2 photographs were taken by DOJ agents of boxes of chemicals inside of storage locker # F-49."
 
 
 11
 On August 8, 1989, Judge Glenette Blackwell of the Los Angeles Municipal Court issued a conventional search and seizure warrant for the search of locker # F-49 and of Salcido's residence, automobile and person. This warrant, the third in the series, authorized the seizure of any methamphetamine precursors, laboratory equipment and other designated contraband found during the course of the searches. Once again, the warrant was supported by an affidavit of Agent Gossman. In this affidavit, Agent Gossman described in detail the information gained from the two previous entries, including the contents of each container of chemicals inspected in the storage locker. Also set forth in the third affidavit was additional information developed after the execution of the second warrant. The new information included the following: that one month's rent for the locker had been paid by a check in the name of Frank Salcido and Dolores Aviles; that the individual who had signed for the delivery at 6600 Orange Street was Thomas Coleman; that on May 15, 1989, Coleman had signed the name "J. Wagner" for another delivery of ephedrine at Orange Street and that Salcido and Coleman had transferred the ephedrine to a Ford Taurus automobile driven by Salcido; that on May 16, 1989, Salcido was observed with another person transporting a large cardboard box that had on it the black shipping bands of the Eastland Chemical Company in Rochester, New York; and that on May 22, 1989, after the delivery of another shipment of ephedrine to Coleman at Orange Street, there was a transfer to the black Ford Taurus driven by Salcido. Additional information regarding the background and criminal record of Salcido also was provided.
 
 
 12
 Execution of the third warrant on August 9, 1989 led to the seizure of methamphetamine precursor chemicals and methamphetamine powder from storage locker # F-49. A number of firearms and other items of evidentiary significance were seized from Salcido's residence. The warrant was executed in a conventional manner and property receipts were given. The items seized, along with other evidence, formed the basis for a 78 count superseding indictment in the Western District of New York charging Salcido and seven co-defendants with various crimes relating to methamphetamine precursor trafficking. Salcido was charged with: violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count One); conspiring to violate RICO, 18 U.S.C. § 1962(d) (Count Two); conspiring to aid and abet the manufacture, distribution, and possession, with intent to manufacture and distribute, of methamphetamine, 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count Four); conspiring to possess and distribute L-ephedrine hydrochloride, a listed chemical, to be used unlawfully to manufacture methamphetamine, 21 U.S.C. § 841(d)(2) and 21 U.S.C. § 846 (Count Five); possessing and distributing L-ephedrine hydrochloride, a listed chemical, knowing or having reasonable cause to believe that it would be used unlawfully to manufacture methamphetamine, 21 U.S.C. § 841(d)(2) (Counts Seven, Twelve, Thirteen, Fifteen and Twenty-One); and violating the Travel Act, 18 U.S.C. § 1952(a)(3) (Counts Twenty-Six, Thirty-One, Thirty-Two, Thirty-Four and Thirty-Eight).
 
 
 13
 Salcido's motion to suppress the evidence seized in consequence of the execution of the three warrants was referred to Magistrate Judge Kenneth R. Fisher, who concluded that probable cause was established for the execution of all three warrants but that the first two warrants were violative of the Fourth Amendment and Fed.R.Crim.P. 41 for failure to include a provision that Salcido be notified within seven days after the searches were conducted as authorized. Magistrate Judge Fisher found, however, that the agents had relied upon the warrants in good faith and therefore recommended that suppression be denied. The district court determined that the record was inadequate to support a finding that the agents acted in good faith reliance upon the warrants, noting
 
 
 14
 that it is not clear whether the officers who drafted and executed those warrants took reasonable precautions to assure their validity in light of the Ninth Circuit's then 2 1/2 year old decision in Freitas I [United States v. Freitas, 800 F.2d 1451 (9th Cir.1986) ] which clearly set forth the notice requirements for such surreptitious searches.
 
 
 15
 Accordingly, the district court directed the Magistrate Judge to conduct a hearing to
 
 
 16
 determine the objective reasonableness of the officers' conduct, including, but not limited to, whether the agents were aware of similar warrants issued in earlier cases or in other districts, ... whether they sought the advice of counsel, ... whether they were aware of the Los Angeles County District Attorney's Office guidelines pertaining to the notice requirements of Freitas I, and whether they informed the [California Judge] of the absence of such notice provisions.
 
 
 17
 The Magistrate Judge held a hearing as directed, receiving the testimony of Agent Gossman and another state officer. He concluded that the agents were aware through past experiences of "sneak and peek" warrants of the type used in the first two searches; that Gossman was familiar with a "sneak and peek" warrant application made by another agent that contained no notice provision; that the agents in the case at bar sought the advice of the Los Angeles District Attorney's Office regarding the two warrants; that the agents were unaware of any guidelines issued by the District Attorney's Office pertaining to notice requirements, and that there were no such guidelines in any event; and that, although the agents did not inform the California Judge of the peculiarities involved in the first two warrants, it would be reasonable to assume that the judge was aware of the nature of the two searches that he authorized. The Magistrate Judge concluded that the agents "had a subjective good faith belief in the validity of the April 18th and May 3rd search warrants" but that objective reasonableness was lacking because it was "necessary to impute knowledge of Freitas I to the agents."
 
 
 18
 Accordingly, the Magistrate Judge recommended that evidence derived from the two warrants authorizing search without physical seizure be suppressed because the officers should have known that such warrants are invalid in the absence of a provision for notice within seven days unless good cause is shown. The Magistrate Judge also recommended that evidence seized pursuant to the third warrant be suppressed "as the derivative fruit of evidence seized pursuant to the covert entry warrants of April 18th and May 3rd." The district judge accepted the recommendations and ordered that all the evidence obtained in consequence of the execution of the three warrants be suppressed.
 
 DISCUSSION
 
 19
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 
 
 20
 U.S. Const. amend. IV. No provision specifically requiring notice of the execution of a search warrant is included in the Fourth Amendment. Accordingly, in Dalia v. United States, 441 U.S. 238, 247, 99 S.Ct. 1682, 1688, 60 L.Ed.2d 177 (1979), the Supreme Court "[found] no basis for a constitutional rule proscribing all covert entries." Resolving the particular issue raised in Dalia, the Court determined that the "Fourth Amendment does not prohibit per se a covert entry performed for the purpose of installing otherwise legal electronic bugging equipment." Id. at 248, 99 S.Ct. at 1689.
 
 
 21
 Rule 41 of the Federal Rules of Criminal Procedure does require notice of the execution of a search warrant but does not prescribe when the notice must be given. Rule 41 by its terms provides for notice only in the case of seizures of physical property:
 
 
 22
 The officer taking property under the warrant shall give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken.
 
 
 23
 Fed.R.Crim.P. 41(d). In Katz v. United States, 389 U.S. 347, 355 n. 16, 88 S.Ct. 507, 513 n. 16, 19 L.Ed.2d 576 (1967), the Supreme Court found in Rule 41 no requirement that those executing a warrant must announce their purpose before undertaking an otherwise authorized search if the announcement would cause the escape of the suspect or the destruction of important evidence. The covert entry in Katz to wiretap a telephone booth was invalidated for failure to secure the approval of a judicial officer. The Supreme Court also has held that the authority conferred by Rule 41 is not limited to the seizure of tangible items. See United States v. New York Telephone Co., 434 U.S. 159, 169, 98 S.Ct. 364, 370, 54 L.Ed.2d 376 (1977) (telephone dial impulses recorded by pen register); see also United States v. Biasucci, 786 F.2d 504, 509-12 (2d Cir.) (visual information obtained through use of video camera), cert. denied, 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54 (1986).
 
 
 24
 Despite the absence of notice requirements in the Constitution and in Rule 41, it stands to reason that notice of a surreptitious search must be given at some point after the covert entry. Freitas I, the Ninth Circuit case cited by the district court as the authority with which Agent Gossman and the other California agents should have been familiar, required that the "time should not exceed seven days except upon a strong showing of necessity." United States v. Freitas, 800 F.2d 1451, 1456 (9th Cir.1986). The Freitas court characterized the entry with which it was confronted as a search for the purpose of seizing intangible property consisting of "information regarding the 'status of [a] suspected clandestine methamphetamine laboratory.' " Id. at 1455.
 
 
 25
 Although the defendant received notice within seven days of the search, the court determined that the failure of the warrant to include a notice provision constrained it to "hold that there was no compliance with Rule 41 under the facts of this case." Id. at 1456. In noting that failure to comply with Rule 41 does not automatically trigger suppression of that which is seized, the court referred to some Ninth Circuit jurisprudence:
 
 
 26
 Assuming the search and seizure does not transgress the Fourth Amendment's commands, this court has held that suppression is required only where agents would not have carried out the search and seizure had they been required to follow the rule and where they "intentional[ly] and deliberate[ly] disregard[ed] ... a provision in the Rule." [cases cited].
 
 
 27
 Id. The court did not further analyze the Rule violation,
 
 
 28
 holding that in this case the warrant was constitutionally defective in failing to provide explicitly for notice within a reasonable, but short, time subsequent to the surreptitious entry. Such time should not exceed seven days except upon a strong showing of necessity.
 
 
 29
 We take this position because surreptitious searches and seizures of intangibles strike at the very heart of the interests protected by the Fourth Amendment.
 
 
 30
 Id. The Court remanded for a determination as to the objective reasonableness of the officers' reliance on the warrant, i.e., for resolution of the good faith exception issue, United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984); Massachusetts v. Sheppard, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), and whether suppression for the Rule 41 violation was justified.
 
 
 31
 When the Freitas case returned to the Ninth Circuit Court of Appeals for the second time, United States v. Freitas, 856 F.2d 1425 (9th Cir.1988) (Freitas II ), the Court found that the officers had acted in an objectively reasonable manner because they relied on the approval of the warrant by an assistant United States attorney and by the issuing judge and therefore were entitled to the protection of the good faith exception. Accordingly, it held "that the constitutional defect in the warrant does not necessitate suppression of the fruits of the surreptitious search." Id. at 1432. As to the Rule 41 violation, the Court found no intentional or deliberate misconduct such as would constitute subjective bad faith on the part of the government agents, no "fundamental" ("clear constitutional") violation, id. at 1432; see United States v. Stefanson, 648 F.2d 1231, 1235 (9th Cir.1981), and no other basis for suppression.
 
 
 32
 Despite the Government's contention to the contrary in the appeal at bar, our choice in United States v. Villegas, 899 F.2d 1324 (2d Cir.), cert. denied, 498 U.S. 991, 111 S.Ct. 535, 112 L.Ed.2d 545 (1990), was to follow Freitas I in requiring that an issuing court give notice of a covert entry search "within a reasonable time after the covert entry" and in specifying that "as an initial matter, the issuing court should not authorize a notice delay of longer than seven days," with extensions only for good cause based on "a fresh showing of the need for further delay." Id. at 1337. We reject the Government's attempt to characterize the notice requirement we have established as merely a "preferred procedure."
 
 
 33
 Although the Freitas I court specifically determined that the warrant was "constitutionally defective" for failure to include a notice requirement, 800 F.2d at 1456, we made no such determination in Villegas. Although the Freitas I court found that covert entry searches without physical seizure "strike at the very heart" of Fourth Amendment-protected "interests," id. at 1456, we used no such language in Villegas. Indeed, it was our perception that a covert entry search for intangiblesis less intrusive than a conventional search with physical seizure because the latter deprives the owner not only of privacy but also of the use of his property. It is less intrusive than a wiretap or video camera surveillance because the physical search is of relatively short duration, focuses the search specifically on the items listed in the warrant, and produces information as of a given moment....
 
 
 34
 Villegas, 899 F.2d at 1337.
 
 
 35
 We prefer to root our notice requirement in the provisions of Rule 41 rather than in the somewhat amorphous Fourth Amendment "interests" concept developed by the Freitas I court. The Fourth Amendment does not deal with notice of any kind, but Rule 41 does. It is from the Rule's requirements for service of a copy of the warrant and for provision of an inventory that we derive the requirement of notice in cases where a search warrant authorizes covert entry to search and to seize intangibles. There remains only the question of whether this Rule 41 violation should call forth the application of the exclusionary rule.
 
 
 36
 More than seventeen years have passed since our own Judge Henry Friendly admonished that "courts should be wary in extending the exclusionary rule in search and seizure cases to violations which are not of constitutional magnitude" and provided this guidance:
 
 
 37
 [V]iolations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.
 
 
 38
 United States v. Burke, 517 F.2d 377, 386-87 (2d Cir.1975) (footnotes omitted) (violations included: failure of warrant to specify time within which search to be made, to designate federal magistrate to whom warrant would be returned and to comply with requirement that warrant be directed to federal officer); see generally 1 William E. Ringel, Searches & Seizures, Arrests and Confessions, §§ 6.6-6.7 (2d ed. 1992).
 
 
 39
 Applying the Friendly formula, it is clear that (1) there was no prejudice to Salcido because the search of his storage locker would have taken place in exactly the same way if Rule 41 had been followed with regard to notice of the entry and (2) Agent Gossman and his fellow officers did not intentionally or deliberately disregard the notice requirement, having sought review of the warrant and application by an assistant district attorney and having presented sufficient factual information to justify issuance of the warrant to a municipal court judge. There was abundant evidence of probable cause upon which to base warrants for covert entry and for searches without physical seizure. There being no basis for suppression of the information yielded by the covert entry warrants, it follows that the conventional search and seizure warrant was properly issued on the basis of the information secured through the covert entries.
 
 CONCLUSION
 
 40
 The order suppressing evidence entered in the district court is reversed, and the case is remanded for further proceedings not inconsistent with the foregoing.