UNITED STATES of America, Plaintiff-Appellee,

v.

Alberto RITTER, Defendant-Appellant.

No. 84–5034.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 6, 1984.

Decided Jan. 24, 1985.

Michael E. Lasater, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Warren R. Williamson, Utsinger & Williamson, San Diego, Cal., for defendant-appellant.

Before WALLACE and NORRIS, Circuit Judges, and HATTER,* District Judge.

HATTER, District Judge:

Alberto Ritter was charged in a two count indictment for possession with the intent to distribute approximately 7.3 kilograms of cocaine, a violation of 21 U.S.C. § 841(a)(1). After numerous suppression motions were denied, Ritter entered a conditional guilty plea, and a judgment of guilty was issued by the trial court. He now appeals, challenging on four separate grounds the denial of his motions to suppress. Because we uphold each of the challenged rulings, the judgment of guilty is affirmed.

## FACTS

On August 3, 1983, Ritter was stopped by a border patrol agent at the San Clemente checkpoint. He appeared extremely nervous, was visibly shaking, and told the agent he was from Central America, but was not carrying his immigration docu-

---

* The Honorable Terry J. Hatter, Jr., United States District Judge for the Central District of California, sitting by designation.

ments. The agent referred Ritter to the secondary inspection area.

At secondary, Ritter told Agent Michael Nicely that he never carried his immigration documents, and gave the agent permission to look in the trunk of his car, which contained five shoe box size packages, sloppily wrapped in colorful paper. With Ritter's consent, Nicely picked up the packages and detected a heavy, sand-like material inside. However, Ritter declined to permit Nicely to open the packages. He was then formally arrested for violating 8 U.S.C. § 1304(e), by willfully failing to carry his immigration documents. Ritter was placed in a holding cell and was apparently advised of his *Miranda* rights. A third border patrol agent, George Pratt, also, advised Ritter of his *Miranda* rights, prior to asking him some personal questions so he could run a computer check on Ritter's immigration status.

At some point, Pratt asked for permission to search the packages in the trunk, and this time Ritter consented, saying something to the effect, "You got me, go ahead." The packages contained approximately three kilograms of cocaine, thus providing the basis for the charges contained in Count One of the Indictment.

Meanwhile, the computer check on Ritter's immigration status had been proceeding through the Chula Vista office, because the checkpoint did not have a computer. When no record of Ritter turned up on the computer, Agent Pratt was forced to call the main office of the Immigration and Naturalization Service in Washington, D.C. and was eventually informed that Ritter was a legally documented alien.

Shortly thereafter, Officer Terry Richhart, an Oceanside police officer assigned to the narcotics task force, conducted two interviews with Ritter. Based upon the information thus obtained, as well as the discovery of the cocaine in Ritter's car, Richhart was instructed by his supervisor to contact a deputy district attorney in order to obtain a nighttime "telephonic" search warrant for Ritter's condominium in Carlsbad.

The deputy district attorney called a municipal court judge who authorized a nighttime search warrant on the basis of an affidavit provided by Richhart via telephone. The subsequent search of Ritter's residence resulted in the seizure of over four kilograms of cocaine, providing the basis for the charges in Count Two of the Indictment.

## ANALYSIS

Ritter raises the following four issues on appeal:

1. The constitutionality of 8 U.S.C. § 1304(e);

2. Whether the consent to search the automobile trunk was vitiated because it was obtained without *Miranda* warnings;

3. The adequacy of the *Franks v. Delaware* hearing on the search warrant affidavit;

4. Whether the fact that the police violated Rule 41 of the Federal Rules of Criminal Procedure, by obtaining a telephonic search warrant from a state rather than a federal magistrate, requires the suppression of evidence.

### A. The Constitutionality of 8 U.S.C. § 1304(e)

Ritter challenges the constitutionality of 8 U.S.C. § 1304(e) which makes it a criminal offense for a documented alien to fail to carry his or her alien registration card, or other immigration documents. Ritter contends that this statute violates his fifth amendment due process and equal protection rights, and is a violation of the eighth amendment prohibition against cruel and unusual punishment.

Turning first to the due process and equal protection argument, it is clear that Ritter's challenge will fail because of the broad "plenary" power of Congress to legislate in the area of immigration and naturalization. While state laws which operate to the disadvantage of aliens are usually subjected to strict scrutiny, the power of Congress to legislate regarding aliens,

while not unlimited, greatly exceeds that of the states. *Mathews v. Diaz*, 426 U.S. 67, 84–86, 96 S.Ct. 1883, 1893–1894, 48 L.Ed.2d 478 (1976). In *Mathews*, the Supreme Court noted that there are a multitude of federal statutes which distinguish between citizens and aliens, pointing out that the whole of Title 8 of the United States Code, regarding aliens and naturalization, is founded on the legality of distinguishing between citizens and aliens. 426 U.S. at 78 n. 12, 96 S.Ct. at 1890 n. 12.

In *United States v. Campos-Serrano*, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971), the Court stated that the essential purpose of the alien registration card is to identify the bearer as a lawfully registered alien residing in the United States, and to govern the alien's activities within the country. *Id.* at 299–300, 92 S.Ct. at 475. The difficulty experienced at the checkpoint in trying to verify Ritter's status is an example of the type of inconvenience and delay which can easily be avoided by simple compliance with the statute. Clearly, Congress has the power to require aliens to carry identification, and such a requirement, as embodied in § 1304(e), does not violate the fifth amendment.

■ Ritter's next contention, that § 1304(e) violates the eighth amendment cruel and unusual punishment clause, is, also, without merit. Ritter points out that the eighth amendment imposes substantive limits on what can be made criminal and punished as such, but overlooks the fact that this particular use of the cruel and unusual punishment clause is to be applied sparingly. The primary purpose of the clause is directed at the method or kind of punishment imposed for a criminal violation. *Ingraham v. Wright*, 430 U.S. 651, 667, 97 S.Ct. 1401, 1410, 51 L.Ed.2d 711 (1977).

An example of the rare type of case in which the clause has been used to limit what may be made criminal is *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), in which a state law making it a crime to be addicted to narcotics was held unconstitutional because it criminalized the status of being ill. *Id.* at 666, 82 S.Ct. at 1420. Clearly, § 1304(e) does not come within the purview of this unusual sort of case, and does not violate the eighth amendment.

### B. The Consent Search/*Miranda* Issue

■ Ritter contends that Agent Nicely should have given him *Miranda* warnings before requesting permission to look in the car trunk and handle the packages contained therein. There is, however, no basis for the suggestion that a request to search must be preceded by *Miranda* warnings, or that the lack of prior *Miranda* warnings vitiates a consent to search. *United States v. Lemon*, 550 F.2d 467, 472 (9th Cir.1977) (a consent to search is not the type of incriminating statement toward which the fifth amendment is directed), *accord Tremayne v. Nelson*, 537 F.2d 359, 360–61 (9th Cir.1976).

In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court refused to impose a knowing and intelligent waiver standard in consent search situations. The Court pointed out the vast difference between the rights protected by *Miranda*, which go to the essence of a fair trial, and those protected by the fourth amendment, namely, the right to privacy and to be left alone. *Id.* at 242, 93 S.Ct. at 2055.

Unlike fourth amendment rights, *Miranda* rights affect the integrity of the truth finding process in a criminal trial. Thus, there is the requirement of a knowing and intelligent waiver of those rights. But fourth amendment rights "are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial." *Id.* The Supreme Court refused to require that a warning of the fourth amendment right to refuse consent be given before consent is requested. *Id.* at 231–32, 93 S.Ct. at 2049–2050. It would, therefore, make little sense to require that *Miranda* warnings, which advise one of the right to remain silent and the right to counsel, be given by police before requesting consent.

■ To validate a consent search, the government must demonstrate that the consent was voluntary. Voluntariness is a question of fact to be determined from all the surrounding circumstances. *Id.* at 248–49, 93 S.Ct. at 2058–2059. Whether *Miranda* warnings were given is one factor for the court to consider. *See generally United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *United States v. Perez,* 644 F.2d 1299, 1303 (9th Cir.1981).

The absence of *Miranda* warnings is not, however, dispositive of whether an individual voluntarily consented to a search. *Hubbard v. Jeffes,* 653 F.2d 99, 103–04 (3rd Cir.1981); *accord United States v. Robinson,* 625 F.2d 1211, 1218 n. 10 (5th Cir. 1980); *United States v. Tobin,* 576 F.2d 687, 695 (5th Cir.) *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978); *United States v. Garcia,* 496 F.2d 670, 673 (5th Cir.1974), *cert. denied,* 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975). *See also United States v. Kunkel,* 417 F.2d 299 (9th Cir.1969) (no merit in defendant's contentions where he had signed consent form, and failed to object to admission of evidence at trial).

■ In this case, Ritter does not contest the voluntariness of his consent to the search of his car trunk. In fact, he concedes that he "readily" gave Agent Nicely permission to look in the trunk. (Appellant's Opening Brief at 6.) Therefore, there is no legal basis on which he can challenge the validity of the consent search, and the denial of the motion to suppress the fruits of that search is upheld.

C. The Adequacy of the *Franks v. Delaware* Hearing

Whether or not a defendant is entitled to a *Franks* hearing on a particular issue raised in a preliminary showing is a mixed question of law and fact. In *United States*

v. *McConney,* 728 F.2d 1195 (9th Cir.1984) (en banc), this court spelled out a framework for deciding which mixed questions would be reviewed *de novo,* and which would be reviewed under the clearly erroneous standard, indicating that most mixed questions would be reviewed *de novo. Id.* at 1204.

However, in *McConney,* this court went on to identify two exceptions to the above-stated general rule: (1) Mixed questions in which the applicable legal standard provides for a strictly factual test, for example, when the issue is motive or intent; and (2) questions of negligence. *Id.* at 1203–04.

■ *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), requires the district court to determine whether the defendant has made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155–56, 98 S.Ct. at 2676. If a satisfactory preliminary showing is made, the district court examines the warrant for probable cause without the disputed material.[1] If the remaining content is insufficient to support a finding of probable cause, the defendant is then entitled to a hearing. *Id.* at 171–72, 98 S.Ct. at 2684. The decision to hold a *Franks* hearing is a determination about the legal sufficiency of a set of allegations, much like the district court's ruling on a Fed.R.Civ.P. 12(b)(6) or summary judgment motion. This decision should be reviewed *de novo.* The district court's conclusion about whether the defendant has demonstrated recklessness or deliberate falsity after the *Franks* hearing, however, is a finding of fact reviewed under the clearly erroneous standard.

■ Ritter's attack on the search warrant affidavit is based on a comparison of the report prepared by Agent Richhart six

---

1. This circuit has assumed, without deciding, that *Franks* applies to omissions from, as well as misstatements in, search warrant affidavits. *United States v. Lefkowitz,* 618 F.2d 1313, 1317 (9th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980); *see also United States v. Estrada,* 733 F.2d 683, 686 (9th Cir.1984) (open question whether *Franks* permits attacks on affidavits marred by omissions of facts, citing *Lefkowitz,* 618 F.2d at 1317).

days after his interviews with Ritter, and the statements made by the same agent on the night of the arrest in his affidavit in support of a search warrant for Ritter's condominium. In the affidavit, Richhart stated, "Ritter said Guillermo gave him cocaine last night, that's 8–2–83, and he took it home and kept it there overnight ...." By contrast, in his report Richhart stated, "Ritter stated that he got the cocaine last night (8–2–83) at the parking lot next to the deli ... (and) left the cocaine in his car, parked at his condo, overnight."

The trial court found the defendant's preliminary showing in this regard inadequate, because the misstatement was negligent at best, and was not material, since there is little difference, for probable cause purposes, as to whether the cocaine was in the car outside the condo or in the condo itself. The district court denied a *Franks* hearing on all but one of the discrepancies between the report and the statement.

In addition, there were several statements made by Ritter which appeared in Richhart's report, but not in the search warrant affidavit, including the following:

1. "When Ritter received the cocaine it was in the boxes and packages just as it was recovered from his vehicle. Ritter had not touched it since it had been given to him at the deli."

2. "There is no cocaine at Ritter's residence."

3. "Ritter has never possessed or used or dealt in cocaine in the past."

The trial court found that the omission of the statements that Ritter had not touched the cocaine, and that he had never dealt or used cocaine in the past was probably not even negligent. The statements were determined to be self-serving, and no reasonable magistrate would believe that anyone would entrust one-half million dollars worth of cocaine to a novice. Our review of the record leaves us in agreement with the district court's decision not to hold a *Franks* hearing on the foregoing discrepancies. The record does not reveal any indication of willful or reckless omission or misstatement.

At the hearing, Agent Richhart testified that he omitted Ritter's statement about the lack of cocaine in his condominium because he didn't believe the statement, due to Ritter's demeanor, and other circumstances surrounding the making of the statement. Richhart testified that when he asked Ritter if he could search his condominium, Ritter stated, "Sure, go ahead, there's nothing in there," but then refused to sign a consent to search form. In addition, Ritter was very nervous when he made the statement.

The trial judge agreed with the agent that in the context in which it was made, Ritter's statement was not worthy of belief, would neither add to nor detract from probable cause, and was, if anything, only negligently omitted from the affidavit. Indeed, the trial court appears to have applied the correct legal standard, and to have evaluated the statements and omissions in a thorough, common sense manner.

Implicit in the court's finding is the awareness that an affidavit, prepared in haste on the night of an arrest would, not surprisingly, contain less exacting detail than would a formal report, prepared under less hurried circumstances several days after the arrest and search in question.

The court's findings that the misstatements and omissions were not willful, but were at most negligent, is not clearly erroneous. Therefore, the trial judge's ruling in this regard will be upheld.

**D. The Violation of Federal Rule of Criminal Procedure 41**

■ There is no dispute that Rule 41 was violated when a search of Ritter's residence was conducted pursuant to a telephonic search warrant authorized by a state, rather than a federal, magistrate. Fed.R.Crim.P. 41(c)(2)(A) provides: "If the circumstances make it reasonable to dispense with a written affidavit, a Federal magistrate may issue a warrant based upon sworn oral testimony communicated by telephone or other appropriate means."

This section does not provide for the issuance of telephonic search warrants by state judges, who are otherwise authorized to issue search warrants based on written affidavits. *See* Fed.R.Crim.P. 41(a), 41(c)(1).

However, the settled rule in the Ninth Circuit is that a purely technical violation of Rule 41 does not require the suppression of evidence otherwise legally obtained. *United States v. Stefanson,* 648 F.2d 1231, 1235 (9th Cir.1981). "Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards." *United States v. Johnson,* 660 F.2d 749, 753 (9th Cir.1981), *cert. denied,* 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). Where the alleged violation is not fundamental, suppression is mandated only where: (1) There was prejudice in that the search might not have occurred or would not have been so abrasive if the Rule had been followed; or (2) there is evidence of intentional and deliberate disregard of a provision of the Rule. *Id.* (use of state rather than federal magistrate to obtain telephonic search warrants in good faith; thus suppression not required); *United States v. Melotte,* 95 F.R.D. 380 (D.Nev. 1982) (fact that telephonic search warrant obtained from state justice of peace did not warrant reversal).

Here, the trial court found that Ritter was not prejudiced by the technical violation of Fed.R.Crim.P. 41, there being no indication that a federal magistrate would have handled the search warrant application differently than did the state judge. The trial court, also, found that the San Clemente police officers did not deliberately violate the Rule. Ritter does not challenge this finding. He contends that the mere violation of Rule 41 requires suppression of the evidence obtained pursuant to the warrant in this case. This court requires more than a violation; there must be either a fundamental violation of the Rule or a bad faith violation of the Rule. Ritter has demonstrated neither.

### CONCLUSION

For the foregoing reasons, we conclude that the cocaine seized from Ritter's automobile and residence was properly admitted into evidence. The judgment of the district court is, therefore, AFFIRMED.