## UNITED STATES *v.* QUINN

No. 84–1717.   Argued March 5, 1986—Decided April 21, 1986

*Mark I. Levy* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *Joel M. Gershowitz.*

*Eugene G. Iredale* argued the cause for respondent.   With him on the brief was *Patrick Q. Hall.*

PER CURIAM.

The writ of certiorari is dismissed as improvidently granted.

CHIEF JUSTICE BURGER, with whom JUSTICE BLACKMUN joins, dissenting.

We granted certiorari to decide the following question:

> "Whether a defendant has a Fourth Amendment expectation of privacy that entitles him to challenge the search of a boat, which he had never personally used prior to the search and which had been out of his custody and control for two months at the time of the search, on the grounds that he was the owner of the boat and was a co-venturer in a criminal enterprise involving the use of the boat by others to smuggle marijuana in which he had a possessory interest."

The question presented is one of considerable significance. It frequently arises in criminal prosecutions because drug smugglers often purchase vessels or airplanes for others to use in criminal enterprises.   Given the massive infusion of dangerous drugs into this country by water and air we have

an obligation to decide the issue presented. The drug problem presents as great a danger to the United States as any foreign power or fiscal problem.

## I

Here are the uncontested facts: Having solicited one Hunt to assist in a drug-smuggling scheme, respondent Quinn purchased a 54-foot vessel—the *Sea Otter*—and gave possession to Hunt. Hunt took the *Sea Otter* to Colombia and picked up roughly 12,000 pounds of marijuana, which he then delivered to Quinn's ranch in California. On June 27, 1979, California Fish and Game officials, suspecting that the *Sea Otter* had been engaged in unlawful fishing operations, boarded the vessel where they observed marijuana "debris" in plain view. They left and notified the United States Coast Guard and the Customs Service of their suspicions that the *Sea Otter* had been used in a marijuana-smuggling operation.

Federal officials intercepted the *Sea Otter* at sea and boarded. The crew could not produce documentation for the boat. Hunt admitted that he had not contacted either the Coast Guard or the Immigration and Naturalization Service, as required by law, when the vessel arrived at the California coast. The officials took the vessel to a nearby Coast Guard station. The forward holds were pumped out and material later identified as marijuana was discovered.

Quinn was arrested and charged with importation and possession of marijuana. He moved to suppress all evidence seized and obtained as result of the stop and search of the *Sea Otter*, arguing that his Fourth Amendment rights as the owner of the *Sea Otter* had been violated. The District Court found that because Quinn had turned the boat over to others he had no standing to contest the search. Quinn then entered a conditional guilty plea, preserving his right to appeal the District Court's decision that he lacked standing to contest the search.

A divided panel of the Court of Appeals for the Ninth Circuit reversed and remanded. 751 F. 2d 980 (1984). The majority found that Quinn had an expectation of privacy based on the "conjunction" of several factors: Quinn's ownership of the vessel; "[h]is possessory interest in the marijuana seized, arising from his joint venture with Hunt"; "[t]he fact that the boat, when searched, was returning from a delivery of marijuana to [Quinn] and was, thus, pursuing the purpose of [Quinn's] joint venture"; and the fact that "reasonable precautions had been taken to preserve privacy." *Id.*, at 981.

## II

On this record we should reverse the Court of Appeals. It is axiomatic that the Fourth Amendment guarantee against unreasonable searches and seizures protects personal privacy interests, not property rights. Thus, the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas* v. *Illinois*, 439 U. S. 128, 143 (1978).

Here the record is clear that Quinn, notwithstanding his naked title interest in the *Sea Otter*, had never made personal use of the vessel that would give rise to a legitimate expectation of privacy. At the time of the search he had never kept private quarters on the boat or used it as a repository of personal effects. Quinn purchased the vessel for the specific purpose of having others operate it to smuggle drugs into the United States. Moreover, Quinn did not exert any control over the boat: his partner Hunt had complete control over the vessel at all times preceding the search and for two years thereafter while he used it for commercial fishing in Costa Rica. These facts afford no basis for any claim to an expectation of privacy in the *Sea Otter*.

The Court of Appeals' contrary conclusion rests on a fundamental misconception of the scope of the Fourth Amendment.

Under the reasoning of the Court of Appeals, an owner's Fourth Amendment rights would extend not to just a single boat but to a fleet of vessels, airplanes, or trucks merely because he has held legal title to and sent these conveyances into an illegal drug-smuggling enterprise. But the Fourth Amendment only extends to what people seek to "preserve as private." *Katz* v. *United States*, 389 U. S. 347, 351 (1967). The Court of Appeals reasoned that since the marijuana was found in the hold of the vessel, "reasonable precautions had been taken to preserve privacy." 751 F. 2d, at 981. Even if this inference is warranted from the facts, it is irrelevant because there is no indication that *Quinn* took any precautions whatsoever. "Fourth Amendment rights are personal rights which, like some other constitutional rights, *may not be vicariously asserted.*" *Rakas* v. *Illinois*, *supra*, at 133–134 (emphasis added). That someone other than the title holder took steps indicating an expectation of privacy has no bearing on whether Quinn's Fourth Amendment rights were violated.

The Court of Appeals' conclusion that Quinn's status as a "co-venturer" with those who exerted control over the vessel and his possessory interest in the contraband gave him standing to challenge the search is similarly misguided. Under this flawed analysis, if a defendant has a sufficient link to seized contraband to incriminate him, the guarantees of the Fourth Amendment attach. But it is the established rule that suppression of evidence "can be successfully urged *only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence.* Coconspirators and codefendants have been accorded no special standing." *Alderman* v. *United States*, 394 U. S. 165, 171–172 (1969) (emphasis added). Unless Quinn can demonstrate a reasonable expectation of privacy in the place searched, neither his involvement in the criminal enterprise, see *Alderman, supra,* nor his naked possessory interest in the seized evidence, see *United States* v.

*Salvucci,* 448 U. S. 83 (1980); *Rawlings* v. *Kentucky,* 448 U. S. 98 (1980), establishes a Fourth Amendment violation.

The District Court, therefore, correctly held that suppression was not warranted because Quinn had not manifested a reasonable expectation of privacy in the *Sea Otter.* I regard it as an error of gravest consequences to allow the erroneous holding of the Court of Appeals to stand when the country is being flooded at its borders with dangerous drugs. I would therefore reverse the judgment of the Court of Appeals.