UNITED STATES of America,
Plaintiff–Appellee,

v.

George Vernon JOHNS, Albert William
Haberkorn, Defendants–Appellants.

Nos. 87–1031, 87–1069.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 16, 1988.

Memorandum May 23, 1988.

Order and Opinion July 15, 1988.

Roger Hanson, Santa Ana, Cal., Paul B.
Meltzer, Lisa M. Martin, Santa Cruz, Cal.,
for defendants-appellants.

John K. Vincent, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Before SNEED, HALL and NOONAN, Circuit Judges.

## ORDER

The memorandum disposition filed May 23, 1988, is hereby redesignated a per curiam opinion as attached.

## OPINION

PER CURIAM:

Appellants George Johns and Albert Haberkorn appeal the district court's refusal to grant a *Franks* hearing on the validity of a search warrant and its refusal to grant an evidentiary hearing under *United States v. Freitas*, 800 F.2d 1451 (9th Cir. 1986). Haberkorn also appeals the district court's refusal to grant him standing to assert his rights to these hearings. We reverse on all three grounds and remand to the district court.

## I.

## FACTS AND PROCEEDINGS BELOW

On January 13, 1985, FBI agent John White applied for a search warrant for Unit 39 of the Kernville Mini–Storage in Kernville, California. An affidavit accompanying the request for a search warrant included the following averments: (1) that on January 10, 1985, federal agents "went to Unit 39 and detected no unusual odors emitting from the front of Unit 39," E.R. at 43; (2) that a reserve deputy of the Kern County Sheriff's Office was renting Units 10 and 11 at the Kernville Mini–Storage; (3) that on January 12, 1985, the reserve deputy, Bray, and an investigator of the Kern County Sheriff's Office, Myers, had visited Units 10 and 11 of the Kernville Mini–Storage; (4) that Units 10 and 11 were directly behind Unit 39 and separated from it only by a sheet of plywood; (5) that the men smelled a strong odor coming from Unit 39, "which they both associated with the illicit manufacture of methamphetamine," E.R. at 44; (6) that the smell was strongest at the rear of Unit 10, "which is also directly at the rear of Unit 39," E.R. at 44–45; and (7) that White, the affiant, "in speaking to other narcotic investigators,

has determined that invariably, those who manufacture methamphetamine often utilize a mini storage warehouse to store excess chemicals, glassware and other items utilized in the illicit manufacture of methamphetamine until the next time that they engage in the illicit methamphetamine production," E.R. at 45.

Based on this affidavit, a search warrant was issued for White to surreptitiously enter Unit 39 to examine the contents without taking anything. Inside the unit, agents found chemicals and glassware commonly used in the manufacturing of methamphetamine. As a result of this discovery, on April 5, 1985 an indictment was entered against Johns and Haberkorn (as well as several other defendants who are not part of this appeal). E.R. at 5–13.

On April 2, 1986, Johns and Haberkorn moved to suppress this evidence and for an evidentiary hearing on the validity of the search warrant. E.R. at 14; *see Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). They argued that the warrant included statements that were either willfully or recklessly false, and that when those statements were deleted the warrant no longer averred probable cause to search Unit 39. E.R. at 13. In particular, they argued that (1) the chemicals found inside the unit have many uses, therefore the affiant could not truthfully say that the odor emanated from "chemicals used in the synthesis of methamphetamine, such chemicals/compounds having no other purpose," E.R. at 15; and (2) the chemicals in the unit were not synthesized in any way, therefore the affiant could not truthfully say that the odor was also or alternatively "the smell of intermediate steps in the process, or the end process itself." *Id.* The defendants also presented the affidavits of two chemistry professors who swore that given the description and photographs of the contents of the storage unit it was impossible for the officer to smell an odor associated with methamphetamine or its manufacturing process. As a result, defendants argued, the only truthful ground for the warrant was that the officers had smelled chemicals that had legitimate uses. As this averment alone

could not support a finding of probable cause, the warrant could not stand. E.R. at 21.

The trial court held that Johns, but not Haberkorn, had standing to challenge the search warrant. It then denied his request for a *Franks* hearing. The court, however, deleted some of the averments in the warrant in response to his challenge. It "[l]eft in to be considered in judging the adequacy of the search warrant ... statements of Investigator Bray based on the actual field experience contained in the White affidavit, and Bray's statement as to his opinions as to what he smelled." E.R. at 206. Noting that Bray had allegedly detected the smell of an illegal substance, E.R. at 209, the court held that after the deletions there was still probable cause to issue the search warrant. E.R. at 210.

On April 28, 1986, both defendants entered a conditional plea of guilty to conspiring to manufacture and distribute methamphetamine. After he pleaded guilty, Johns moved for a reconsideration of the denial of his motion for an evidentiary hearing, based on the district court's decision in *United States v. Freitas*, 610 F.Supp. 1560 (N.D.Cal.1985). He argued that the covert nature of the warrant caused it to violate the Fourth Amendment and Fed.R.Crim.P. 41. E.R. at 183. The district court denied the motion. E.R. at 243. On January 12, 1987, Johns was sentenced to ten years; on March 9, 1987, Haberkorn was sentenced to five years. Appellee's Brief at 2–3. Both defendants timely appealed. On June 10, 1987, their motion to consolidate their appeals was granted. E.R. at 242.

## II.

## JURISDICTION

The district court had jurisdiction under 18 U.S.C. § 3231 (1982). This court's jurisdiction rests on 28 U.S.C. § 1291 (1982).

## III.

## DISCUSSION

A. *Appellants' Request for a* Franks *Hearing.*

*Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), held that a criminal defendant has a right under the Fourth and Fourteenth Amendments, after *ex parte* issuance of a search warrant, to challenge the truthfulness of statements made in affidavits supporting the warrant. To obtain an evidentiary hearing, however,

> the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false, and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.... Finally, if these requirements are met, and if, when material that is subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 171–72, 98 S.Ct. at 2684. "[T]his court has recognized that where a substantial preliminary showing is made, the court must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material to the magistrate's finding of probable cause." *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir.1987); *see United States v. Stanert*, 762 F.2d 775, 780, *modified*, 769 F.2d 1410 (9th Cir.1985). A district court's decision not to hold a *Franks* hearing is reviewed *de novo*. *United States v. Burnes*, 816 F.2d 1354, 1356 (9th Cir.1987); *United States v. Perdomo*, 800 F.2d 916, 920 (9th Cir.1986).

■ We hold that the district court should have granted a *Franks* hearing. Quite clearly, the defendant made a "substantial preliminary showing" that Agent

White's [1] affidavit was deliberately false or at least in reckless disregard of the truth. As required by *Franks*, the defendants allege that the observations made by the officers could not have been true. They allege that they never engaged in any activities at the storage unit that could have produced the odors the officers allegedly smelled. They bolster this contention with expert witnesses who swore the officer's affidavit was necessarily false because it is scientifically impossible to smell what the officers claimed to have smelled given the contents of the storage space searched under the warrant. This amounts to a "substantial preliminary showing" that the affidavit supporting the warrant included false statements.

It is also clear that the affidavit purged of those falsities will not support a finding of probable cause. When references to the odor associated with the presence or manufacturing of methamphetamine are removed from the warrant all that is left is a description of the location and rental ownership of the storage unit in question. This is not enough.

It is not clear whether the judge below believed that Johns had established a substantial preliminary showing of falsity or omission. He did partially redact the warrant to exclude some of the challenged averments, but found probable cause still existed in the redacted warrant. However, the warrant, as he redacted it, still contained references to the smell of methamphetamine. Again, whether the officers could have smelled what they claimed is what a *Franks* hearing should determine. The defendants, in challenging *all* of the averments as to smell, made a sufficient

showing to require a *Franks* hearing. And without those averments the probable cause support for the search warrant collapses because the remainder of the affidavit merely describes the location and ownership of the storage unit. Thus, we remand to the district court with instructions to hold a *Franks* hearing.

### B. Appellants' Request for a Hearing on "Good Faith" Under Freitas.

The warrant to search Unit 39 was a surreptitious entry, or what is known as a "sneak-and-peek" warrant. It allowed the agents to enter the unit, examine and take an inventory of the unit's contents, and then leave without disturbing the contents or notifying the owner of the unit.[2] *See* E.R. at 40 (warrant).

The defendants argue that the warrant violated Fed.R.Crim.P. 41 [3] and the Fourth Amendment. In *United States v. Freitas*, 800 F.2d 1451 (9th Cir.1986), we reviewed a similar warrant. We held that the warrant violated Rule 41. *Id.* at 1455-56. Violation of Rule 41, however, does not lead to suppression of evidence unless: (1) it is a "fundamental" violation—that is, a violation that "in effect, renders the search unconstitutional under traditional fourth amendment standards," *United States v. Vasser*, 648 F.2d 507, 510 (9th Cir.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed. 2d 360 (1981); (2) "the search might not have occurred or would not have been so abrasive if the Rule had been followed," *United States v. Ritter*, 752 F.2d 435, 441 (9th Cir.1985); or (3) "there is evidence of intentional and deliberate disregard of a provision of the Rule," *id.*

---

**1.** Agent White may, of course, have believed Deputy Bray's statements of how he came to believe there were chemicals for the manufacture of methamphetamines in the storage space, but the warrant affidavit is not cleansed by Agent White's belief in the truthfulness of his affidavit. As noted in *United States v. Roberts*, 747 F.2d 537, 546 n. 10 (9th Cir.1984), the affidavit may be attacked if based on another law enforcement agent's alleged observations.

**2.** The agents used a standard search warrant form, and crossed out the requirements of notice and receipt. E.R. at 40. For a general

discussion of this type of warrant, see Note, *Covert Searches*, 39 Stan.L.Rev. 545 (1987).

**3.** Rule 41(d) requires that the officer executing the warrant either give to the owner of the searched premises a copy of the warrant and a receipt for the property taken, or leave the copy and receipt on the premises. It also requires that the inventory be made in the presence of the owner of the premises "or in the presence of at least one credible person other than the applicant for the warrant."

*Freitas* did not reach the question of whether the evidence had to be excluded under one of these standards. Rather, it held that the warrant's lack of any notice requirement violated the Fourth Amendment. It held that time allowed for notice "should not exceed seven days except upon a strong showing of necessity." *Freitas*, 800 F.2d at 1456. The court went on to say that the agents' reliance on the warrant might have been objectively reasonable, thus allowing the evidence to be admitted under the good faith exception to the exclusionary rule. *Freitas*, 800 F.2d at 1457; *see United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The district court had found that the agents could not have acted in good faith. This court, however, remanded to the district court for further fact finding on the subject of the agents' good faith, and on whether the violation of Rule 41 required exclusion of the evidence. *Freitas*, 800 F.2d at 1457–58.

Johns, at the time he made his *Freitas* motion, had only the district court opinion in *Freitas* for support. That court had simply struck down the covert warrant as unconstitutional. *United States v. Freitas*, 610 F.Supp. 1560, 1571 (N.D.Cal.1985). Our decision in *Freitas* was handed down after Johns' motion but before that motion was considered by the district court. The district court, however, merely stated that "[i]n view of the Ninth Circuit's reversal, the Court declines to reconsider its prior ruling" as to the availability of an evidentiary hearing. E.R. at 244.

■ It must be presumed that the district court denied the request for an evidentiary hearing for one of two reasons. First, it might have believed that the warrant in question did not violate either the Fourth Amendment or Rule 41(d). This would be an incorrect conclusion. This

warrant is indistinguishable from the warrant in *Freitas*.

■ Second, the district court might have believed that the officers had acted in good faith in relying on the warrant. The record does not unequivocally support this conclusion. Our standard of review is de novo. *See Freitas*, 800 F.2d at 1454. The defendants insist that the agents did not act in good faith. In particular, they argue that the true source of information on which the search warrant was based was an informant, and that the failure to inform the magistrate of this informant is evidence of bad faith. Appellant's Brief at 32. The defendants, to support their contention, point to a probation report that refers to the existence of an informant. E.R. at 239. They also allege that a government attorney admitted the informant's existence to one of the defendants' attorneys.[4] And, of course, they point to the allegations of their experts to the effect that the agents could not have smelled what they claim to have smelled. Their allegations are difficult to review on appeal. The government has not explained how it came to suspect illegal activity within Unit 39 before any smells were detected. Nor does it flatly deny the existence of an informant. Under these circumstances, we must hold that sufficient doubt as to the agents' good faith exists, requiring us to remand the case to the district court for an evidentiary hearing on the good faith issue.[5]

### C. *Haberkorn's Standing to Challenge the Admission of the Evidence.*

■ The district court denied Haberkorn standing to challenge the search apparently because his name was not on the rental agreement for the storage unit. Fourth Amendment rights may be asserted only by a person whose own Fourth Amendment privacy expectations have been infringed by the search in question. Thus, the issue

---

**4.** We note that at oral argument on this appeal the government's attorney essentially conceded the existence of an informant.

**5.** We decline at this juncture to consider whether the violation of Rule 41 requires an evidentiary hearing even if it is clear that the officers met the *Leon* good faith test. If the government

would not have conducted the search if the magistrate had required proper notice, then the violation of Rule 41 conceivably would be material enough to require suppression of the evidence found. *United States v. Ritter*, 752 F.2d 435, 441 (9th Cir.1985).

is whether Haberkorn has a legitimate expectation of privacy in the storage unit.

Neither ownership nor presence are required to assert a reasonable expectation of privacy under the Fourth Amendment. A "formalized arrangement among defendants indicating joint control and supervision of the place is sufficient to support a legitimate expectation of privacy." *United States v. Broadhurst*, 805 F.2d 849, 851–52 (9th Cir.1986). If the record "amply indicates a formalized, ongoing arrangement" between the defendants for the storage of chemicals in the storage unit, *id.* at 852, Haberkorn had a reasonable expectation of privacy in the unit. In several cases this court has found that participation in an arrangement that indicates joint control and supervision of the place searched is enough to establish a Fourth Amendment protected privacy interest. *See United States v. Quinn*, 751 F.2d 980 (9th Cir. 1984), *cert. dismissed*, 475 U.S. 791, 106 S.Ct. 1623, 89 L.Ed.2d 803 (1986); *United States v. Pollock*, 726 F.2d 1456 (9th Cir. 1984); *United States v. Johns*, 707 F.2d 1093 (9th Cir.1983), *rev'd on other grounds*, 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985).

In the instant case, the indictments charged the defendants with criminal conspiracy as to all the substantive crimes involving the manufacture and possession of the drugs. An affidavit submitted by Haberkorn alleged that he was the co-owner of the chemicals found in the storage unit and the payor of a portion of the rental payments made with respect to the unit. We have before us no other relevant documents.

We are unable to determine on what grounds the district court decided that Haberkorn had no standing. The government in its brief, however, states that for the "purposes of appeal" it does not contest Haberkorn's standing to contest the search. Brief of Appellee United States at 12. Although the indictments and Haberkorn's affidavit do not rise to the level of "stipulated facts," as in *Pollock, supra,* these documents do indicate that Johns and Haberkorn were engaged in a joint venture

of some sort at the location of the surreptitious search. Therefore we conclude that Haberkorn has standing to assert his right to any hearing on the admission of evidence relating to the search of the Unit 39 storage space.

REVERSED and REMANDED.

NOONAN, Circuit Judge, concurring in part and dissenting in part:

I concur except as to the last paragraph. I would remand to the district court to determine whether Haberkorn has standing under the standards we are enunciating.