### UNITED STATES of America

v.

### Joseph J. SANTOPIETRO, et al.

### Crim. No. 3:91CR00065 (TFGD).

United States District Court,
D. Connecticut.

Jan. 17, 1992.

Holly B. Fitzsimmons, Amy B. Lederer, Asst. U.S. Attys., Albert S. Dabrowski, U.S. Atty., Bridgeport, CT, for U.S.

Hugh F. Keefe, Suzanne McAlpine, Lynch, Traub, Keefe & Errante, New Haven, CT, for Joseph J. Santopietro.

Paul Yamin, Waterbury, CT, for Perry Pisciotti.

Jules Sack, New York City, for Fred Giusti.

Joseph F. Keefe, David Moraghan, Smith, Keefe, Conti & Moraghan, Torrington, CT, for Jack Giacomi.

Richard Cramer, Wethersfeld, CT, for Robert Giacomi.

Joseph Fazzano, Patrick Tomasiewicz, Hartford, CT, for Paul Vitarelli.

Eileen McGann, West Redding, CT, for Jeffrey Santopietro.

## RULING ON MOTION TO SUPPRESS TANGIBLE EVIDENCE

DALY, District Judge.

The indictment in this case, returned by the Grand Jury on September 24, 1991, charges defendant Joseph J. Santopietro ("Defendant") with two counts of conspiracy, 18 U.S.C. § 371, seven counts of corrupt receipt of payment, 18 U.S.C. § 666(a)(1)(B), two counts of bank fraud, 18 U.S.C. § 1344, eight counts of embezzlement of federal funds, 18 U.S.C. § 665, and two counts of tax evasion, 26 U.S.C. § 7201. Having entered not guilty pleas to all of the alleged charges on October 4, 1991, the defendant now moves to suppress any and all tangible objects seized by the government from his person, real estate, office, automobile and residence. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

The defendant's motion arises out of the issuance and execution on March 12, 1991 of three search warrants for his home, his then-offices on the first floor of the Waterbury City Hall ("City Hall"), and a basement storage area in City Hall behind a locked door off the employee cafeteria. The motion is, at least ostensibly, sweeping in its breadth, seeking the suppression of "any and all tangible objects taken from [the defendant's] person, real estate, office, automobile, and residence, and all evidence derived therefrom." Deft's Amplified Mot. at 1 (filed Nov. 25, 1991). As implicitly conceded by defense counsel at the December 30, 1991 hearing on this motion, however,[1] and as suggested by the minimal support lent to other arguments in the defendant's written submissions in support of this motion, his paramount challenge is to the warrantless seizure of his briefcase and its contents.[2] What follows are the Court's findings of fact and conclusions of law, as adduced from the sole testimony received on this question at the suppression hearing, that of Special Agent Michael Clark of the Federal Bureau of Investigation ("Agent Clark"), a witness for the government and the case agent in the so-called "Waterbury corruption investigation."[3]

## FINDINGS OF FACT

On March 12, 1991 at 3:35 p.m., Agent Clark and two other special agents of the Federal Bureau of Investigation entered City Hall to execute the above-referenced search warrants. Trans. at 185–86. After making their presence known to the defendant's receptionist and after the defendant's press aide apparently delivered a message to him, the defendant left a meeting in his office to speak with the three agents. *Id.* at 187. The defendant was informed that the agents had search warrants they intended to execute, handed the warrants, and advised that he could reenter the meeting and adjourn it without telling the other individuals present of the reason for the adjournment. *Id.* at 187–88. The defendant reentered his office unescorted. *Id.* at 188. Approximately thirty seconds later, the meeting was adjourned and the individuals in the defendant's office left. *Id.* at 189. The defendant remained in his office, told the agents that none of the items recited in the warrants were present there, and placed a call to his attorney. *Id.* at 189–90.

Shortly thereafter, Agent Clark was "paged" on his beeper. Upon returning the call to the numbers on the beeper, he spoke to a confidential source who advised him that the defendant had directed Jack Giacomi to take his briefcase out of the office. As Mr. Giacomi was later to inform the Agent, the defendant had turned over the briefcase to him with the words "take this thing out of here for me." *Id.* at 190–91. Agent Clark then received a call from a second confidential source who advised

---

**1.** The suppression hearing also addressed the defendant's November 8, 1991 filed motion to suppress statements. Following the conclusion of the parties' respective presentations on that motion, the following colloquy ensued:

> MR. KEEFE: May it please the Court. May we move into the motion to suppress tangible evidence at this point, sir?
> THE COURT: Which evidence?
> MR. KEEFE: The briefcase.

Trans. at 180.

**2.** Defendant's January 8, 1992 filed post-hearing brief, for example, closes by referencing the briefcase and its contents alone. *See* Deft's Post–Hearing Brief at 7 ("[t]herefore, the briefcase and other tangible evidence contained therein should be suppressed").

**3.** Agent Clark's testimony is essentially unchallenged. That such testimony consisted, in part, of hearsay, is of no matter, particularly where any risk of prejudice was substantially diminished by the fact that he was available for cross-examination. *See United States v. Raddatz,* 447 U.S. 667, 678, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 ("[a]t a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial") (citations omitted), *reh'g denied,* 448 U.S. 916, 101 S.Ct. 36, 65 L.Ed.2d 1179 (1980); *United States v. Matlock,* 415 U.S. 164, 177, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *United States v. Bradford,* 496 F.Supp. 366, 371 n. 27 (D.Conn.1980) ("[a]lthough it was hearsay, Special Agent Meyrick's testimony ... was clearly admissible at the hearing on the motion to suppress") (citations omitted). The Court is left with little recourse but to accept as true what was, in any event, a credible recounting of the relevant events on March 12, 1991.

him of the identical information, "that Mr. Giacomi had taken the briefcase out of the office at the direction of Mr. Santopietro." *Id.* at 191. In the immediate wake of both calls, Agent Clark advised Special Agent Wolf of the situation and made efforts to locate Mr. Giacomi[4] and the briefcase. Specifically, Agent Clark walked across the street to the "DEGA offices" to see if Mr. Giacomi was there. Meeting with no success, Agent Clark returned to the defendant's office. Within minutes, Mr. Giacomi arrived at the office with the briefcase. *Id.* at 192. Agent Clark relayed the following exchange between himself, Mr. Giacomi and Agent Wolf: "I asked Mr. Giacomi where he had—why he had taken the briefcase out of the office. And he told me that he was directed by Mr. Santopietro to 'Take this thing out of here for me.' I immediately, the next question was well, why did you do that. And he advised me that he had worked for Mr. Santopietro for a number of years and he did as he was told." *Id.* at 193. Mr. Giacomi then handed the briefcase to Agent Clark, and informed the Agent that he had taken it to the corporation counsel offices down the hallway, that he had possession of it from the moment it was handed to him until the moment he gave it to Agent Clark, and that he had not opened it. *Id.* at 193–94. Agent Clark opened the unlocked briefcase, noted that there were certain documents in it that had been cited in the search warrant, and seized it as evidence of obstruction of justice. *Id.* at 195.

Agent Clark conceded that the briefcase was not listed in any of the warrants executed on March 12, 1991. *Id.* at 202. He explained that "[t]he briefcase was seized because, number one, it was containing the documents that were authorized on the warrant; and number two, it was also

seized for what I consider obstruction of justice." *Id.* Agent Clark further noted that the inventory of the briefcase was not made until the next day and that numerous items contained in it were ultimately returned to the defendant. *Id.* at 205.[5]

## CONCLUSIONS OF LAW

■ The Court turns its attention preliminarily to the claim that all three warrants fail to satisfy the Fourth Amendment's particularity requirement. *See* U.S. Const. amend. IV ("no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"). Defense counsel's memorandum in support of this contention, limited to boilerplate arguments devoid of specific references to the warrants, is lacking. Defendant's post-hearing brief also lacks specification as to which items listed in attachment A to all of the warrants are allegedly "so overly broad as to allow general rummaging through Joseph J. Santopietro's documents, records and property." Deft's Post–Hearing Brief at 6. Absent any effort to further this claim at the hearing on the motion and upon consideration of the arguments set forth in the government's post-hearing submissions, the Court is without any basis upon which to afford the defendant the relief sought, at least with respect to this argument, on the present record. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991) (per curiam) (citation omitted).

■ The Court finds that portion of defendant's motion seeking the suppression of his briefcase and its contents likewise unavailing,[6] albeit for a different reason. It is by now well-established that "the

---

**4.** Jack Giacomi is also a named defendant in this action. Mr. Giacomi is charged in the indictment with one count of conspiracy, 18 U.S.C. § 371, two counts of corrupt receipt of payment, 18 U.S.C. § 666(a)(1)(B), and one count of making a false statement on a tax return, 26 U.S.C. § 7206.

**5.** The defendant's allegation in his supporting memorandum that he was handing the briefcase to another person at the time it was seized by

the government was not pursued, let alone substantiated, at the suppression hearing. Nor has defendant referred to the allegation in his post-hearing submission.

**6.** The Court concurs in the defendant's assessment that "[t]here is no question that [Joseph J.] Santopietro, in fact, owned the briefcase and the Government does not contend otherwise." Deft's Post–Hearing Brief at 6.

Fourth Amendment only extends to what people seek to 'preserve as private.'" *United States v. Quinn,* 475 U.S. 791, 794, 106 S.Ct. 1623, 1625, 89 L.Ed.2d 803 (1986), *cert. dismissed as improvidently granted* (Burger, C.J., and Blackmun, J., dissenting) (quoting *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)). The threshold inquiry in examining any Fourth Amendment claim, as such, is whether the movant has exhibited an actual subjective expectation of privacy in the item allegedly unlawfully seized. Only upon a finding that this defendant had such a subjective expectation, and upon a subsequent finding that such an expectation was one that society is prepared to recognize as reasonable, *see Katz,* 389 U.S. at 361, 88 S.Ct. at 516 (1967) (Harlan, J., concurring); *California v. Ciraolo,* 476 U.S. 207, 211, 106 S.Ct. 1809, 1811, 90 L.Ed.2d 210, *reh'g denied,* 478 U.S. 1014, 106 S.Ct. 3320, 92 L.Ed.2d 728 (1986), need the Court consider whether the warrantless seizure here at issue passes constitutional mustre. *See Smith v. Maryland,* 442 U.S. 735, 739, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) ("this Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action") (citations omitted); *United States v. Rahme,* 813 F.2d 31, 34 (2d Cir.1987) ("[i]n order to prevail on a contention that a search violated the Fourth Amendment, an accused must show that he had a legitimate expectation of privacy in a searched place or item"); *see generally United States v. Gerena,* 662 F.Supp. 1218, 1232–60 (D.Conn.1987).

■ Precisely because "Fourth Amendment rights are personal rights which ... may not be vicariously asserted," *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176, *reh'g*

denied sub nom. *Ivanov v. United States,* 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475 (1969), the burden of establishing such an expectation of privacy in the seized item lies with the movant. *See Jones v. United States,* 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960) (burden lies on the defendant to "allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy"), *overruled on other grounds by United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *see also Florida v. Riley,* 488 U.S. 445, 455, 109 S.Ct. 693, 699, 102 L.Ed.2d 835 (O'Connor, J., concurring) ("[i]n my view, the defendant must bear the burden of proving that his expectation of privacy was a reasonable one"), *reh'g denied,* 490 U.S. 1014, 109 S.Ct. 1659, 104 L.Ed.2d 172 (1989); *United States v. Paulino,* 850 F.2d 93, 96 (2d Cir.1988), *cert. denied,* 490 U.S. 1052, 109 S.Ct. 1967, 104 L.Ed.2d 435 (1989). Defendant here faces the additional burden of rebutting the government's contention that any privacy interest he arguably possessed in the briefcase and its contents was lost when he passed the case to Jack Giacomi.

■ Preliminarily, the Court notes that the defendant's undisputed ownership of the briefcase will not suffice to carry his burden. *See Rawlings v. Kentucky,* 448 U.S. 98, 105–06, 100 S.Ct. 2556, 2562, 65 L.Ed.2d 633 (1980); *Salvucci,* 448 U.S. at 90 n. 5, 91, 100 S.Ct. at 2552 n. 5, 2553; *United States v. Rahme,* 813 F.2d 31, 34 (2d Cir.1987) (holding that ownership is not dispositive of the standing question). Even assuming, *arguendo,* that such a presumption did exist at law, the Court cannot avoid the question of whether, by handing the briefcase to Mr. Giacomi, the defendant effectively "abandoned" it for the purposes of this Fourth Amendment analysis and simultaneously relinquished any privacy interest he arguably may have had in either it or its contents.[7] In making such a deter-

---

7. *See United States v. Torres,* 949 F.2d 606, 608 (2d Cir. Nov. 20, 1991) (an otherwise legitimate privacy interest may "be lost by disclaiming or abandoning property, especially when actions or statements disavow any expectation of privacy. Neither possession nor ownership of prop-

erty establishes a legitimate expectation of privacy unless the party vigilantly protects the right to exclude others") (citations omitted); *United States v. Springer,* 946 F.2d 1012, 1017 (2d Cir.1991) ("[i]t is settled that a warrantless seizure of property that has been abandoned

mination, the Court "must focus on the intent of the person who is purported to have abandoned the property." *Lee*, 916 F.2d at 818 (citations omitted). Logically, such intent is to be gleaned from such factors as " 'words spoken, acts done, and other objective facts.' " *Id.* (quoting *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973)).

The defendant's side of this argument includes neither his own testimony, nor even a sworn affidavit to the effect that he had no intention of abandoning the briefcase when he handed it to Mr. Giacomi. What the Court has, however, is the objective fact of the defendant's uncontested ownership of the briefcase, "clearly a factor to be considered" in the Fourth Amendment equation, *Salvucci*, 448 U.S. at 91, 100 S.Ct. at 2553; his written statement in a brief that he "did not intend to abandon the briefcase," Deft's Post–Hearing Brief at 7; and, although not specifically embraced by the defendant, testimony that he purposefully removed the briefcase from the area to be searched, giving it to an individual who had allegedly done what the defendant "had told him to do" over the years. As to the latter point, even the government has noted that "it could be argued that [Joseph J.] Santopietro directed the removal of the briefcase from the office to preserve his 'privacy' from the searching agents." Gov't Resp. to Mot. at 14 (filed Dec. 6, 1991). The Court agrees. Perhaps no greater manifestation of a subjective expectation of privacy in the briefcase and its contents could be had than that exhibited by the defendant in taking deliberate steps to remove the briefcase from the searching eyes of the federal agents and his giving of it to a long-time associate. *Cf. Paulino*, 850 F.2d at 97 (subjective expectation of privacy demonstrated where defendant had hidden counterfeit bills under a rubber mat in an automobile, and placed his feet on it, "clearly evidencing his desire to keep these items private"). This uncontested version of events lends considerable credence, in the Court's view, to what would otherwise be an unimpressive statement by the defendant, on a cold record, that he had no intent of abandoning the suitcase. *See* Deft's Post–Hearing Brief at 7.

Confronting the foregoing in the privacy expectation analysis is a single fact adduced at the hearing—that in turning the briefcase over to Mr. Giacomi,[8] the defendant divested himself of the ability to exclude access of all others, namely federal agents, to the case and its contents and thereby effectively assumed the risk of discovery. *Cf. United v. McKennon*, 814 F.2d 1539, 1545 (11th Cir.1987) ("[b]y relinquishing possession and control of the carry-on bag [carrying cocaine], disassociating with Lee ... and sending her [with the bag] into an environment where a security search was certain and an investigative detention possible, McKennon assumed the risk of discovery and effectively surrendered the capacity to exclude others from the bag") (citation omitted); *United States v. Brown*, 743 F.2d 1505, 1507–08 (11th

does not violate the Fourth Amendment") (citations omitted); *United States v. Lee*, 916 F.2d 814, 818 (2d Cir.1990) ("[w]hen a person voluntarily abandons property ..., he forfeits any reasonable expectation of privacy that he might have in the property") (citations omitted).

**8.** A clarifying point bears mention here. Although the government submits that the briefcase was unlocked when the defendant turned it over to Mr. Giacomi, *see* Gov't Post–Hearing Resp. at 2, the record reveals only that it was unlocked when it reached Agent Clark's hands. Trans. at 195. While the government's implied assumption—that it was the defendant and not Mr. Giacomi who unlocked the briefcase—is not an inconceivable one, and, in the Court's view, the most reasonable one flowing from Agent

Clark's testimony, the record should be clear that the evidence presented at the suppression hearing does not compel such a finding.

The fact that the briefcase was unlocked leaves the case at bar distinguishable from such other briefcase search cases as *United States v. Barry*, 853 F.2d 1479, 1482 (8th Cir.1988) (expectation of privacy interest in locked briefcase preserved where movant's possession of the key to it "clearly demonstrated his intent to control the suitcase and its contents") and *United States v. Presler*, 610 F.2d 1206, 1213–14 (4th Cir.1979) (noting that "[t]he very act of locking them and retaining either the key or the combination to the locks on the two briefcases was an effective expression of the defendant's expectation of privacy").

Cir.1984) (no legitimate expectation of privacy afforded the defendant in cocaine concealed on co-defendant's leg—"On the authority of *Hoffa*, if Manikowski were an informant who betrayed [the movant] Brown and surrendered the cocaine to the government, Brown could not exclude the cocaine from evidence on a theory that he had a legitimate expectation of privacy in contraband stowed in Manikowski's pant leg: Brown would have to be held to have assumed the risk of betrayal"). The fact is not without significance. As the Second Circuit has observed, that a movant has relinquished possession over the item sought to be suppressed will "often result in a finding that an accused had no legitimate expectation of privacy *because the absence of a right to exclude others from access is an important factor militating against a legitimate expectation of privacy.*" *Rahme*, 813 F.2d at 34 (emphasis added); *see also Torres, supra.* That the briefcase found its way into Agent Clark's hands at all is more than a bit telling. The fact that Mr. Giacomi turned the briefcase over to Agent Clark amply demonstrates that the defendant was in no position to exercise any control over it. Indeed, the record reveals that when he had been in such a position, the defendant attempted to ensure that the briefcase would not find its way into the Agent's hands. Certainly, the defendant was in no position of which the Court is aware to have controlled, in a legal sense, Mr. Giacomi.

The question of whether the defendant exhibited a subjective expectation of privacy in the briefcase and its contents is, in the final analysis, a close one. It is not, however, a question the Court need resolve on this record for the defendant's implied assertion of standing ultimately founders on the second, objective prong of the Fourth Amendment standing inquiry. Assuming, *arguendo*, that the defendant has exhibited a subjective expectation of privacy in the briefcase, the Court simply cannot conclude that his expectation is one that "society is prepared to recognize as 'reasonable,'" *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring); *see also Ciraolo*, 476 U.S. at 211, 106 S.Ct. at 1811; *New Jersey v. T.L.O.*, 469 U.S. 325, 338, 105 S.Ct. 733, 741, 83 L.Ed.2d 720 (1985); *Smith*, 442 U.S. at 740, 99 S.Ct. at 2580.

Although the Supreme Court has observed that by virtue of placing personal property inside a closed container, e.g., a briefcase, an individual will have "manifest[ed] an expectation that the contents would remain free from public examination," *United States v. Chadwick*, 433 U.S. 1, 11, 97 S.Ct. 2476, 2483, 53 L.Ed.2d 538 (1977), *overruled by California v. Acevedo*, ── U.S. ──, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), "the mere placement of personal property into a closed container does not ensure that a subjective expectation of privacy will ultimately be judged by society as legitimate. Extenuating circumstances can erode the reasonableness of a privacy expectation to the extent that the interest is not constitutionally protected." *McKennon*, 814 F.2d at 1544 (1987). Such extenuating circumstances are clearly present in the case at bar. Having only glanced at the search warrants "very quickly", Trans. at 188, the defendant had every reason to believe that the briefcase would be searched in the course of their execution. His actions only moments later in turning the briefcase over to Mr. Giacomi allow of only one reading—that the defendant was deliberately seeking to avoid such a search. The Court cannot conclude that society would condone such obstructionist tactics by lending a seal of legitimacy to the defendant's belated assertion of a privacy claim in the briefcase. To hold otherwise would be to allow the defendant the proverbial luxury of "having it both ways". *Cf. McKennon*, 814 F.2d at 1545 ("[w]e do not believe that the Fourth Amendment was designed to protect the privacy interests of an individual who conspires to transport contraband, perceives the possibility that the container will be searched, severs all appreciable ties with the courier in an effort to escape criminal liability, and then asserts an interest in the

container after the contraband and the conspiracy had been discovered in order to articulate an expectation of privacy and suppress evidence of criminal activity").[9]

## CONCLUSION

Based on the totality of the circumstances, the Court is not prepared to hold that any subjective expectation of privacy the defendant may have held in the briefcase and its contents is one that society is willing to accept as legitimate.[10]

As the defendant is, accordingly, without standing to challenge the reasonableness under the Fourth Amendment of the warrantless seizure and search here at issue, that portion of his motion seeking to suppress the use as evidence of his briefcase and its contents is DENIED. The remain-

der of the defendant's motion is also DENIED for the reasons set forth above.

SO ORDERED.

9. Although the Court's research has failed to reveal any case on the precise factual footing as the instant one, it has discovered, and finds significance in, numerous cases where a movant's efforts to conceal facially inculpatory evidence from law enforcement authorities, often successful enough to allow a finding of a subjective privacy interest, ultimately proved the movant's undoing in the standing inquiry. *See, e.g., United States v. Lopez,* 761 F.2d 632 (11th Cir. 1985) (in upholding the validity of a Coast Guard search of a secret compartment beneath the deck of a ship, the Eleventh Circuit observed that "[o]bviously, appellants had an actual, subjective expectation of privacy in the area searched: they did not want the drugs found. We are not, however, prepared to say that such an expectation is 'one that society is prepared to recognize as "reasonable"'"); *United States v. Sarda–Villa,* 760 F.2d 1232, 1236–37 (11th Cir. 1985) ("[c]ertainly, appellants have alleged an actual expectation of privacy in the hidden compartments [on the boat]. However, we are not willing to say that society is prepared to recognize a justifiable expectation of privacy solely on the basis of appellants' efforts to secret the contraband. Drug smugglers can not assert standing solely on the basis that they hid the drugs well and hoped no one would find them"); *Gerena,* 662 F.Supp. at 1253 ("[e]ven assuming that each defendant's allegations establish a proper claim of subjective interest, the Court concludes that, viewed objectively, the defendants' professed privacy expectations ... cannot possibly be classified as 'reasonable' within the meaning of the Fourth Amendment.... At best, the defendants' allegations establish no more than that they attempted to conceal their activities in the hope that no one would find out what they were up to. This type of claim, without more, is clearly inadequate to

confer standing") (footnote and citations omitted).

10. Although the Court's standing determination obviates the need for any discussion of the parties' respective views on the constitutional propriety of the seizure and search here at issue, the Court cannot allow an argument advanced by the government on this question to pass without comment. The Court refers specifically to the government's assertion in both its pre- and post-hearing submissions that had the briefcase remained in the defendant's office, it could have been searched "in the ordinary course" under the presumed general authority of the warrants. Gov't Resp. to Mot. to Supp. at 10; *see also* Gov't Post–Hearing Resp. at 1 n. 1 ("[i]f the briefcase had remained in the office after the warrant was served, it would have been searched for items within the scope of the warrant") (filed Jan. 10, 1992); Gov't Proposed Conclus. of Law at 3 ("[h]ad the briefcase remained on the premises, it would have been subject to search pursuant to the lawfully issued search warrant") (filed Jan. 8, 1992). The government's analysis of this issue takes as its premise, however, the far reaching notion that probable cause to search the defendant's office necessarily amounted to probable cause to search a briefcase in that office. The Court does not agree and views the government's cited authority for this point as inapposite. *See Acevedo,* —— U.S. ——, 111 S.Ct. at 1990 ("[f]rom *Carroll [v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543(1925) ] through [*United States v.] Ross* [456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572(1982) ], this Court has explained that automobile searches differ from other searches"); *Chadwick,* 433 U.S. at 13, 97 S.Ct. at 2484 ("a person's expectations of privacy in personal luggage are substantially greater than in an automobile").